**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT**

COMMONWEALTH OF KENTUCKY, *ex rel.* ANDY BESHEAR, ATTORNEY GENERAL,

       PLAINTIFF,

v.

MCKESSON CORPORATION,

       DEFENDANT.

CIVIL ACTION NO.
**(Removal from Commonwealth of Kentucky, Franklin Circuit Court, Div. II, Civil Action No. 18-CI-00056)**

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant, McKesson Corporation, by counsel, has removed the above-captioned action from the Franklin Circuit Court, Franklin County, Kentucky, to the United States District Court for the Eastern District of Kentucky.  As grounds for removal, McKesson states as follows:

### I. NATURE OF REMOVED ACTION

1.      On January 22, 2018, the Attorney General of the Commonwealth of Kentucky (the "KYAG") filed a Complaint on behalf of the Commonwealth of Kentucky ("Plaintiff") against McKesson Corporation ("McKesson" or "Defendant") in the Franklin Circuit Court, Division II, Franklin County, Kentucky, captioned *Commonwealth of Kentucky,* ex rel.*, Andy Beshear, Attorney General v. McKesson Corporation.*  The court assigned the case Civil Action No. 18-CI-00056.

2.      Plaintiff complains of over-distribution of prescription opioids into Kentucky. Plaintiff pleads that McKesson distributed prescription opioids into Kentucky across state lines

from a federally registered "distribution hub in Washington Courthouse, Ohio, bearing DEA registration RM0220688." Compl. ¶ 20.

3.      The Complaint asserts nine counts: Consumer Protection Act Violation (Count I); Public Nuisance (Count II); Breach of Statutory Duties/Negligence Per Se (Count III); Negligence (Count IV); Unjust Enrichment (Count V); Fraud by Omission (Count VI); Medicaid Fraud KRS Chapter 205 (Count VII); Medicaid Fraud KRS Chapter 194A (Count VIII); and Punitive Damages (Count IX). Plaintiff seeks declaratory, injunctive, and compensatory relief. *See* Compl., Prayer for Relief, at 42-43.

4.      Although Plaintiff disavows stating a federal question, Compl. ¶ 25, Plaintiff pleads, *inter alia*, that the "'closed' chain of distribution" under which McKesson operates "was specifically designed by Congress to prevent the type of diversion and abuse that is complained of herein," *id.* ¶ 42. Plaintiff thus pleads that its claims are based on alleged violations of federal law, the federal Controlled Substances Act.

5.      McKesson has not responded to the Complaint in state court. McKesson's response is not due until March 15, 2018, pursuant to a stipulation between McKesson and Plaintiff that was memorialized in an agreed order entered by the Franklin Circuit Court.

6.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (Sept. 25, 2017), Dkt. # 328. McKesson intends to tag this case immediately for transfer to the MDL.

7.      In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and a copy of all process, pleadings, and orders served upon Defendant in the state court action are attached hereto as **Exhibit A**.

## II. TIMELINESS OF REMOVAL

8.     The KYAG served the Complaint on McKesson via its registered agent for service of process on January 24, 2018.  In accordance with the requirements of 28 U.S.C. § 1446(b), this notice of removal is timely filed within thirty (30) days after service of Plaintiffs' Complaint upon McKesson.

## III. PROPRIETY OF VENUE

9.     Venue is proper in this district and division under 28 U.S.C. § 1441(a), because the state court where the suit has been pending is located in this district and this division.

## IV. BASIS OF REMOVAL

10.     Removal of this case is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the federal Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*

### A.     Plaintiff's claims facially arise under federal law.

11.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 830, (2002).

12.     Federal jurisdiction exists when a federal question is presented "on the face of the plaintiff's properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Loftis v. UPS,* 342 F.3d 509, 514 (6th Cir. 2003).

13.     "[T]he party who brings the suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).  In this case, Plaintiff has decided to rely upon federal law.

14.    Plaintiff pleads that McKesson allegedly violated federal law with, *inter alia*, the following allegations:

   a.    "[A] sophisticated, closed distribution system exists to [distribute controlled substances] ***across the nation***," Compl. ¶ 41 (emphasis added);

   b.    "This 'closed' chain of distribution was specifically designed by Congress to prevent the type of diversion and abuse that is complained of herein," *id.* ¶ 42;

   c.    "This closed-system of state and federal authority imposes specific duties upon wholesale distributors to monitor, identify, halt and, perhaps most importantly, report suspicious orders of controlled substances.  21 C.F.R. § 1301.74; *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017)," *id.* ¶ 44 (citing only federal law);

   d.    "Defendant had a legal duty to ensure they were not filling suspicious orders that should have simply been refused. . . . Defendant did not refuse to ship or supply the often abused and highly addictive prescription opioids to Kentucky pharmacies, between 2007 and the present," *id.* ¶ 69 (referring to legal duty arising only under federal law; *see Masters*, 861 F.3d at 212–13 (citing *In re Southwood Pharm., Inc., Revocation of Registration*, 72 Fed. Reg. 36,487, 36,501 (DEA July 3, 2007)));

   e.    "Additionally, Defendant knowingly failed to report suspicious orders in Kentucky from 2007 to the present," *id.* ¶ 70 (referring to legal duty arising only under federal law); and

   f.    "Specifically, Defendant shipped millions of doses of highly addictive controlled painkillers into Kentucky, many of which should have been

stopped and/or investigated as suspicious orders," *id.* ¶ 73 (referring to legal duty arising only under federal law).

15.    Plaintiff does not identify a state law source for a requirement that wholesale pharmaceutical distributors identify and report suspicious orders of controlled substances to a Kentucky governmental official or entity, or a state law source for a requirement that wholesale pharmaceutical distributors "halt," "refuse," "stop and/or investigate[]" suspicious orders of controlled substances from registered pharmacies.

16.    Plaintiff thus asserts claims based on McKesson's alleged violations of legal duties that arise only under the federal CSA and its implementing regulations with, *inter alia*, the following allegations:

    a.    "Defendant failed and refused to comply with the Controlled Substances Acts[1] and the reporting requirements imposed therein by wholly failing to report facially suspicious orders and failing to halt distribution when appropriate," and "[a]s a result of Defendant's violations of the Controlled Substances Acts, vis-à-vis failing to report and halt suspicious orders, the Defendant[] per se violated the Kentucky Consumer Protection Act," Compl. ¶¶ 114-117 (Count I);

    b.    McKesson allegedly created a public nuisance by allegedly "intentionally and/or unlawfully fail[ing] to maintain effective controls against diversion through proper monitoring, distributing opioids without reporting, and refusing to fail to fill suspicious orders," *id.* ¶ 126 (Count II);

---

1 Because Plaintiff never identifies any provision of the Kentucky Controlled Substances Act and its implementing regulations that contains any requirement analogous to the federal CSA's Reporting Requirement or the DEA's Shipping Requirement, *see Masters*, 861 F.3d at 212–13, Plaintiff's references in its claims to the "Controlled Substances Acts," plural, and to "state law" are surplusage.

c. "Defendant McKesson was under a duty required by law, to disclose or report orders of unusual size, orders deviating substantially from a normal patter, or orders of unusual frequency," and McKesson failed to provide the aforementioned reporting required by [federal] law. . . . Further, Defendant admitted to prior violations of the federal Controlled Substances Act," *id.* ¶¶ 167-170 (Count VI); and

d. "McKesson through its duty to identify and track suspicious orders of prescription drugs, knew or should have known that, as a natural consequence of its actions, the Commonwealth would necessarily be paying for prescription[] opioid that were improperly diverted for non-medically necessary and improper abuse. . . . McKesson's misrepresentations were material because if the Commonwealth had known of McKesson's failure to comply with state and federal law, McKesson's license to distribute prescription opioids would have been suspended or not renewed, and, pursuant to both state and federal law, said shipments would not have been made by Defendant," *id.* ¶¶ 179-180 (Count VII).

17.     In summary, Plaintiff facially pleads in at least Counts I, II, VI, and VII that those claims are based on alleged violations of "federal law"—namely, the federal "Controlled Substances Act."

18.     Plaintiffs are indeed the master of their complaint, and they "may avoid federal jurisdiction by ***exclusive*** reliance on state law." *Caterpillar*, 482 U.S. at 392 (emphasis added). Plaintiff chose to explicitly allege violations of federal law as the basis for at least four counts. Counts I, II, VI, and VII of the Complaint, thus plead a federal question. *Merrell Dow*

*Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (the "suit arises under the law that creates the cause of action").

19.     As discussed below, this federal law is a necessary, disputed, and substantial element of all Plaintiff's claims and thus presents a substantial federal question, whether or not Plaintiff had specifically pleaded that it seeks to apply and enforce the federal Controlled Substances Act.  In Counts I, II, VI, and VII, however, federal law is presented "on the face of [Plaintiffs'] properly pleaded complaint."  *Caterpillar, Inc.*, 482 U.S. at 392; *see Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (removal "is appropriate if the face of the complaint raises a federal question") (citations omitted); *Loftis,* 342 F.3d at 514.

20.     Furthermore, it is not necessary for federal jurisdiction that McKesson establish that all Plaintiff's nine counts raise a federal question.  Even if Plaintiff could prove one or more of its nine counts against McKesson without establishing a violation of federal law, this Court still has federal-question jurisdiction.  "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chicago*, 522 U.S. 156, 166 (1997).

21.     Because the Court has original jurisdiction over Counts I, II, VI, and VII, it has supplemental jurisdiction over Plaintiff's other five counts, which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

**B.     Plaintiff's claims all depend on a substantial question of federal law.**

22.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "the vindication of a right under state law necessarily turn[s] on some construction of federal law."  *Merrell Dow*, 478 U.S. at 808-809; *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within

7

[§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

23.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotation marks omitted); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

24.     As set forth below, all four requirements are met in this case.  Although some of Plaintiff's theories of recovery against McKesson ostensibly are pleaded as state law claims, the underlying theory of liability is expressly premised on McKesson's alleged violations of federal law or alleged duties arising out of federal law, specifically, the CSA.  McKesson lawfully distributes prescription opioids to registered pharmacies.  Plaintiff complains that McKesson ***over***-distributed prescription opioids into Kentucky.  *See, e.g.*, Compl. ¶ 2.  All Plaintiff's claims depend on an allegation that some portion of McKesson's lawful shipments were actually unlawful because the shipments were of suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship.

25.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the federal CSA, 21 U.S.C. §§ 801, *et. seq.* and its implementing regulations.  *See* 21 C.F.R. § 1301.74; Compl. ¶ 44 (citing only 21 C.F.R. § 1301.74 as basis for

alleged requirement to "identify . . . and, perhaps most importantly, report suspicious orders of controlled substances").

26.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice.  Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses.  *See Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501 (DEA July 3, 2007), as source of DEA's "Shipping Requirement"); Compl. ¶ 44 (citing only *Masters* decision as basis for alleged requirement to "halt" suspicious orders).

27.     Plaintiff's theories of liability against McKesson, as pleaded in the Complaint, are predicated on allegations that McKesson breached alleged duties under the federal CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and not to ship such alleged suspicious orders of controlled substances to Kentucky pharmacies.  *See, e.g.*, Compl. ¶ 42 ("This 'closed' chain of distribution was specifically designed by Congress to prevent the type of diversion and abuse that is complained of herein."); *id.* ¶ 44 (citing federal law as only source of alleged duties to "to monitor, identify, halt and, perhaps most importantly, report suspicious orders of controlled substances"); *id.* ¶ 2 (alleging that McKesson's actions "include filling massive and/or 'suspicious' orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency," which quotes 21 C.F.R. § 1301.74(b)); *id.* ¶¶ 114-117 (alleging that McKesson violated the federal CSA's reporting and shipping requirements by "failing to report and halt suspicious orders"); *id.* ¶ 126 (alleging that McKesson failed to uphold federal duties to "maintain effective controls

against diversion through proper monitoring, distributing opioids without reporting, and refusing

to fail to fill suspicious orders"); *id.* ¶¶ 167-170 (alleging that McKesson violated legal duty,

imposed by federal, not Kentucky, law to "to disclose or report orders of unusual size, orders

deviating substantially from a normal pattern, or orders of unusual frequency"); *id.* ¶¶ 179-180

(alleging that McKesson had a "duty to identify and track suspicious orders of prescription

drugs," which, again, arises under federal, not Kentucky, law). Plaintiff does not and cannot

identify a state law source for alleged duties to identify, report, and not ship suspicious orders of

controlled substances.[2]

28.    The federal question presented by Plaintiff's claims therefore is "(1) necessarily

raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

29.    <u>First</u>, Plaintiff's state law claims "necessarily raise" a federal question because

"the right to relief depends upon the construction or application of federal law." *PNC Bank, N.A.*

*v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006); *see also Virgin Islands Hous.*

*Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under

28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law

***or if the action requires construction of a federal statute***, or at least a distinctive policy of a

---

[2] Plaintiff's citations to Kentucky law that purportedly impose reporting requirements on McKesson nowhere identify state law that actually imposes a requirement on a wholesale distributor. Plaintiff also cites Kentucky controlled substances law that incorporates federal controlled substances law. *See, e.g.*, Compl. ¶ 21. This incorporation of federal law into state law supports the conclusion that Plaintiff's claims present a substantial federal question. *See, e.g., West Virginia* ex rel. *McGraw v. Eli Lilly & Co.*, 476 F. Supp.2d 230, 233-34 (E.D.N.Y. 2007) (concluding that WVAG's state-law claims stated substantial federal question because claimed damages arose from State's coverage of Zyprexa that was mandated by federal Medicaid law); *In re Pharm. Indus. Average Wholesale Price Litig.* (*Fla.*), 457 F. Supp.2d 65, 74 (D. Mass. 2006) (remanding action because, *inter alia*, defendants failed to show that Florida law incorporated federal definition of "average wholesale price;" finding that lack of evidence that Florida adopted federal definition meant that same phrase in state law could be defined without presenting federal question); *In re Pharmaceutical Industry Average Wholesale Price Litigation* (*Ariz.*), 457 F.Supp.2d 77, 80 (D. Mass. 2006) (concluding that "the meaning of A[verage] W[holesale] P[rice] in the federal Medicare statute is a substantial federal issue that properly belongs in federal court").

federal statute requires the application of federal legal principles" (emphasis added)); *Hardy v. Medtronic, Inc.*, 41 F. Supp. 3d 571, 580 (W.D. Ky. 2014) (finding that plaintiff's state law claim necessarily raised a federal issue because proving a violation of federal law was essential to the plaintiff's case).

30.     As pleaded, Plaintiff's claims against McKesson require it to establish that McKesson breached duties under federal law, including one alleged duty found only in federal law, by failing to report and stop shipments of otherwise lawful orders of controlled substances into Kentucky.   Therefore, the Complaint necessarily raises a federal issue—namely, whether McKesson violated the CSA.

31.     Second, this federal issue is "actually disputed" because the parties disagree as to whether McKesson violated its duties that arise only under the federal CSA.   Indeed, this federal issue is the "central point of dispute."  *Gunn*, 568 U.S. at 259.

32.     Third, the federal issue presented by Plaintiff's claims is "substantial."   "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."  *Gunn*, 568 U.S. at 260.   Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260, 262 (quotation marks omitted).   As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

33.     Plaintiff's theories of McKesson's liability necessarily require that a court determine the scope of McKesson's obligations under federal law.   As Plaintiff pleads,

11

regulation of controlled substances is first and foremost federal regulation: the "'closed' chain of distribution" under which McKesson operates "was specifically designed by [the United States] Congress to prevent the type of diversion and abuse that is complained of herein."  Compl. ¶ 42; *see id.* ¶ 41 (pleading that a "sophisticated, closed distribution system exists to [distribute controlled substances] ***across the nation***") (emphasis added); *id.* ¶ 20 (pleading that McKesson's distribution into Kentucky was across state lines from a DEA-registered facility in Ohio). Indeed, the Congress designed the CSA with the intention of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a ***unified approach*** to narcotic and dangerous drug control."  1970 U.S.C.C.A.N. 4566, 4571-72 (emphasis added).

34.    Plaintiff's theories of McKesson's liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).[3]  Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F.

---

[3] The Commonwealth's attempt to enforce the CSA raises a substantial federal question, even though the CSA does not provide for a private right of action.  In 2005 in *Grable*, the U.S. Supreme Court specifically held that the lack of a federal cause of action does ***not*** foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."  *Grable*, 545 U.S. at 316; *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal question and satisfy *Grable* even though no private right of action exists under the Act).

App'x at 104 n.3 (plaintiff's state law claim "raises a substantial federal question-the interpretation of" a federal statute "over which the District Court properly exercised removal jurisdiction").

35.     Removal is particularly appropriate here because Plaintiff's action is but one of more than 400 similar actions nationwide, most of which now are pending in an MDL in the Northern District of Ohio.  The actions consolidated in the MDL include at least 43 similar actions brought originally in federal court by Kentucky counties and municipalities, some of which appear as examples in the Commonwealth's complaint.  *See* Compl. ¶¶ 54-60 (alleging over-distribution to, *inter alia*, Perry, Clay, and Bell counties, which are federal court plaintiffs). As Plaintiff pleads, the "opioid epidemic" is a "nationwide" problem.  Compl. ¶ 5 (citing article titled *Opioid Epidemic in the United States*).  Judge Polster has dedicated his initial efforts presiding over the MDL to immediately achieving solutions to this nationwide problem.[4]

36.     Fourth, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.  Federal courts exclusively hear challenges to DEA authority to enforce the federal CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—DEA—applies them.  Furthermore, Plaintiff seeks, *inter alia*, to "stop McKesson from fulfilling suspicious orders for opioids" and to "enjoin" McKesson.  Compl. ¶ 15; *see id.* Prayer for Relief at 42-43.  The CSA vests federal courts with jurisdiction over proceedings seeking to enjoin violations of the CSA.  *See* 21 U.S.C. § 882(a) ("The district

---

[4] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018.  Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.  Attorney General Beshear participated in the MDL settlement conference on January 31, 2018.

courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction in proceedings . . . to enjoin violations of this subchapter.").   Thus, federal courts already are the primary forum for determining the permissible scope of restraints on distributors under the federal CSA.   Plaintiff's Complaint presents these precise questions; again, the federal CSA is the only statutory scheme referenced in the Complaint that contains "suspicious order" regulations.   Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."   *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

37.     In summary, removal of this action is appropriate, because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."   *Grable*, 545 U.S. at 314; *see also, e.g.*, *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*, 824 F.3d 308, 315–18 (2d Cir. 2016) (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.   Thus, plaintiffs' "right to relief necessarily depends on resolution of a substantial question of federal law.") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of the Communication Act's uniform rate requirement satisfy "the *Grable* test for federal-question removal jurisdiction"); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claim based on violation of Internal Revenue Code

"gives rise to federal-question jurisdiction" under *Grable*); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

38.     To the extent that the Court determines that some, but not all, Plaintiffs' counts in the Amended Complaint state a substantial federal question, it has supplemental jurisdiction over the counts determined not to state a substantial federal question, which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

## IV. OTHER REMOVAL ISSUES

39.     Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the suit has been pending and serve notice of the filing of this Notice of Removal on Plaintiffs' counsel.

40.     McKesson files this Notice of Removal without waiving any defenses to the claims asserted by Plaintiffs.

41.     McKesson reserves the right to amend or supplement this Notice.


**WHEREFORE**, McKesson removes this action, now pending in the Franklin Circuit Court, Division II, Franklin County, Kentucky, as Civil Action No. 18-CI-00056 to this Court.

Dated this the 23rd day of February, 2018.

Respectfully submitted,

/s/ Carol Dan Browning

Carol Dan Browning
Jennifer A. Pekman
**STITES & HARBISON PLLC**
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone:   (502) 587-3400
E-mail:       cbrowning@stites.com
              jpekman@stites.com

*Counsel for Defendant, McKesson Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via United States first-class mail this 23rd day of February, 2018, upon the following:

| | |
|---|---|
| LeeAnne Applegate | C. David Johnstone |
| Elizabeth Natter | Brian C. Thomas |
| Charles W. Rowland | Assistant Attorneys General |
| Assistant Attorneys General | Commonwealth of Kentucky |
| Commonwealth of Kentucky | Office of the Attorney General |
| Office of the Attorney General | Office of Medicaid Fraud and Abuse |
| Office of Consumer Protection | Control |
| 1024 Capital Center Drive, Suite 200 | 1024 Capital Center Drive, Suite 200 |
| Frankfort, KY  40601 | Frankfort, KY  40601 |
| LeeAnne.Applegate@ky.gov | David.Johnstone@ky.gov |
| Elizabeth.Natter@ky.gov | Brian.Thomas@ky.gov |
| Charlie.Rowland@ky.gov | |
| | *Counsel for Plaintiff* |
| *Counsel for Plaintiff* | |

/s/ Carol Dan Browning
*Counsel for Defendant, McKesson Corporation*