UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, *ex rel.* ANDY BESHEAR, ATTORNEY GENERAL,<br><br>        PLAINTIFF,<br><br>v.<br><br>MCKESSON CORPORATION,<br><br>        DEFENDANT. | CIVIL ACTION NO. 3:18-CV-10 |

**MOTION TO STAY
PENDING RULING BY JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
AND
OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED BRIEFING**

This case belongs in federal court because the claims of Plaintiff, the Commonwealth of Kentucky ("Plaintiff" or the "Commonwealth"), are based on the federal Controlled Substances Act (the "CSA"). Making its reliance on federal law clear, Plaintiff pleads:

> The "'closed' chain of distribution" under which McKesson operates "*was specifically designed by Congress to prevent the type of diversion and abuse that is complained of herein*."

Compl. ¶ 42 (emphasis added).

This case also belongs in the multidistrict litigation pending in the Northern District of Ohio (the "MDL"), where it would join hundreds of other opioid-related cases involving common factual allegations, common legal questions, and common defendants.

Defendant McKesson Corporation ("Defendant" or "McKesson") accordingly moves to stay all proceedings in this action until the Judicial Panel on Multidistrict Litigation (the "JPML") decides whether to transfer this case to the MDL.

The balance of interests decisively favors a stay because a stay would promote judicial efficiency, prevent inconsistent rulings, and conserve resources of the parties and the Court. Furthermore, a temporary stay would not prejudice any party, whereas the lack of a stay would impose unnecessary and unwarranted hardships on McKesson by forcing it to proceed in another, potentially unnecessary forum.

For these reasons, McKesson respectfully requests that the Court enter an order vacating all deadlines, including any deadline to respond to the Complaint, and staying all proceedings in this action. Because a complete stay is warranted, Plaintiff's Motion for Expedited Briefing of Plaintiff's Motion for Remand should be denied, as further discussed below. *See infra* § C.

## BACKGROUND[1]

This lawsuit is one of more than 450 federal actions pending nationwide in which government entities and others assert claims against pharmaceutical manufacturers, distributors, and physicians relating to the sale, marketing, and distribution of FDA-approved prescription opioid medications.

To consolidate these cases for coordinated resolution, the JPML formed an MDL in December 2017 and transferred more than 60 opioid-related actions to Judge Dan A. Polster in the Northern District of Ohio. JPML Dkt. No. 328 ("Transfer Order") (attached as **Exhibit 1**). Since then, the JPML has transferred more than 300 additional actions to the MDL—including cases from this Court. *See Floyd Cnty. v. Purdue Pharma L.P.*, No. 7:17-cv-00186, slip op. at *1 (E.D. Ky. Jan. 22, 2018) (attached as **Exhibit 2**) (noting transfer of approximately 20 cases before this

---

[1] "JPML Dkt." refers to the JPML's docket in *In re National Prescription Opiate Litigation*, MDL No. 2804 (J.P.M.L.), and "EDKY Dkt." refers to this Court's docket in *Commonwealth of Kentucky v. McKesson Corporation*, No. 3:18-cv-10 (E.D. Ky.).

Court against "manufacturers and distributors of opioid prescription medications").[2]  As scores of new cases are filed across the country each week, the JPML continues—and will continue—to transfer more actions to the MDL.  *See, e.g.*, JPML Dkt. Nos. 759, 775.

On January 22, the Commonwealth through its Attorney General filed this lawsuit in Franklin County Circuit Court.  *See* EDKY Dkt. No. 1-1.

On February 23, McKesson removed this action to this Court, EDKY Dkt. No. 1, and tagged it for inclusion in the MDL the same day, JPML Dkt. No. 778.

On February 28, the JPML issued a conditional transfer order, indicating its decision that this case and eleven others should be transferred to the MDL on the ground that they appear to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio."  JPML Dkt. No. 798 ("Conditional Transfer Order (CTO-13)") (attached as **Exhibit 3**).

If the Commonwealth does not oppose transfer by March 7, the JPML's transfer decision will become final.  *See* JPML Dkt. No. 799.  If the Commonwealth opposes transfer, the JPML will make a final transfer decision after briefing.

On March 1, the Commonwealth filed Plaintiff's Motion to Remand and Plaintiff's Motion for Expedited Briefing Schedule.  EDKY Dkt. Nos. 4 & 5.

---

[2] *See also* JPML Dkt. No. 368 (transferring 115 actions); JPML Dkt. No. 401 (transferring 8 actions); JPML Dkt. No. 525 (transferring 37 actions); JPML Dkt. No. 546 (transferring 33 actions); JPML Dkt. No. 601 (transferring 44 actions); JPML Dkt. No. 654 (transferring 16 actions); JPML Dkt. No. 668 (transferring 8 actions); JPML Dkt. No. 716 (transferring 12 actions); JPML Dkt. No. 753 (transferring 19 actions); JPML Dkt. No. 772 (transferring 18 actions).

**ARGUMENT**

**A. A Stay is Warranted to Promote Judicial Economy and because of a Lack of Hardship or Inequity and Lack of Potential Prejudice.**

Courts routinely stay proceedings in cases like this one that involve pending MDL transfer decisions. Indeed, just last month, this Court stayed proceedings in an opioid-related lawsuit that, like this case, was "likely to be consolidated with" the MDL. Ex. 2, *Floyd Cnty.*, slip op. at *1. As this Court recognized, "Judge Polster has indicated his desire to address motions to remand collectively," *id.* at *4, and while most removed cases in the MDL have been removed on diversity grounds, other related cases have been removed on the basis of federal question jurisdiction or federal officer jurisdiction, 28 U.S.C. § 1442, and have been tagged for the MDL.[3] Likewise, federal district courts in more than 30 similar opioid-related cases have stayed proceedings in materially identical circumstances.[4]

---

[3] *See, e.g.*, *City of Paterson v. Purdue Pharma L.P. et al.*, No. 2:17-cv-13433 (D.N.J.) (removed on basis of federal question jurisdiction); *The Cherokee Nation v. McKesson Corporation, et al.*, No. 6:18-cv-00056 (E.D. Okla.) (removed on basis of federal officer jurisdiction). The *Paterson* and *Cherokee Nation* actions have both been tagged for inclusion in the MDL. If the JPML transfers these removed cases to the MDL, Judge Polster likely will have to determine whether federal-question or federal-officer jurisdiction exists, as he will ultimately have to do for cases originally filed in federal court that base jurisdiction on the federal question of alleged CSA violations.

[4] *See, e.g.*, *Chicago v. Janssen Pharm. Inc. et al.*, No. 1:14-cv-4361, ECF No. 659 (N.D. Ill. Nov. 16, 2017) (granting Defendants' opposed motion for "stay pending decision by JPML on a motion to transfer"); *County of Wayne v. Purdue Pharma L.P.*, No. 17-cv-13334, ECF No. 29 (E.D. Mich. Nov. 15, 2017) (finding a stay "appropriate in order to allow the [JPML] to hear and rule on the consolidation motion"); *Lewis v. Purdue Pharma, L.P.*, No. 5:17-cv-5118, Dkt. # 57 (W.D. Ark. Oct. 25, 2017) (holding deadlines and hearing dates in abeyance); *see also Knott Cnty. v. Purdue Pharma L.P.*, No. 7:18-CV-0006, slip op. at *1 (E.D. Ky. Jan. 31, 2018); *Anderson Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00070, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Boone Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00157, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Boyle Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00367, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Campbell Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00167, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Garrard Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00369, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Fleming Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00368, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Harlan Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00247, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Knox Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00248, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Leslie Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00249, slip op. at *1 (E.D. Ky. Nov. 3, 2017); *Lincoln Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00370, slip op. at *1 (E.D. Ky. Nov. 3,

In determining whether a stay is warranted, the Court must consider three factors: "(1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Beshear v. Volkswagen Grp. of Am., Inc.*, No. 16-CV-27-GFVT, 2016 WL 3040492, at *6-*7 (E.D. Ky. May 25, 2016). All three factors militate in favor of a stay.

First, a stay here would promote judicial economy by conserving the Court's and the parties' resources, avoiding duplicative litigation, and preventing inconsistent rulings. *See id.* at *8 ("[T]he court system's interest in judicial economy, fairness, and consistency is the factor that weighs most heavily in favor of granting a stay in this case."); *Fox v. DePuy Orthopaedics, Inc.*, 2011 WL 6057509, at *2 (W.D. Ky. Dec. 2, 2011) (granting contested motion to stay pending transfer decision by MDL panel); *ZeniMax Media Inc. v. Samsung Elecs. Co., Ltd.*, 2017 WL 4805524, at *1 (E.D. Tex. Oct. 25, 2017) ("Concluding that a stay will conserve the court's resources, avoid duplicative litigation, and avoid inconsistent rulings, the court stays the case."); *see also Beatty v. Merck & Co., Inc.*, No. CIV. S–06–1845, 2006 WL 2943090, at *1 (E.D. Cal. Oct. 13, 2006) ("Given the number of cases that present this exact jurisdictional question[,] . . . the interest of judicial economy favors staying this action pending its transfer to the MDL proceeding."); *Rivers*

---

2017); *Madison Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00371, slip op. at *1 (E.D. Ky. Nov. 2, 2017); *Nicholas Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00373, slip op. at *1 (E.D. Ky. Nov. 2, 2017); *Franklin Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00071, slip op. at *1 (E.D. Ky. Nov. 2, 2017); *Henry Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00073, slip op. at *1 (E.D. Ky. Nov. 2, 2017); *Shelby Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00072, slip op. at *1 (E.D. Ky. Nov. 2, 2017); *Kenton Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00182, slip op. at *1 (E.D. Ky. Nov. 2, 2017); *Bell Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00246, slip op. at *1 (E.D. Ky. Oct. 27, 2017); *City of Lorain v. Purdue Pharma, L.P.*, No. 1:17-cv-01639, Dkt. # 66 (N.D. Ohio Oct. 27, 2017); *Boyd Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00104, slip op. at *1 (E.D. Ky. Oct. 27, 2017); *Greenup Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00105, slip op. at *1 (E.D. Ky. Oct. 27, 2017); *Clay Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00255, slip op. at *1 (E.D. Ky. Oct. 27, 2017); *Pendleton Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00070, slip op. at *1 (E.D. Ky. Oct. 27, 2017); *Whitley Cnty. v. AmerisourceBergen Drug Corp. et al.*, No. 17-cv-00250, slip op. at *1 (E.D. Ky. Oct. 27, 2017).

*v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997) ("[A] majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL panel because of the judicial resources that are conserved.").

Second, McKesson would be unduly and unnecessarily harmed in the absence of a stay. McKesson is involved in hundreds of opioid-related lawsuits across the country, and the central goal of the MDL is to consolidate these actions in a single court to reduce the cost and inefficiency of litigating these claims. *See* Ex. 1, Transfer Order at 3 ("[C]entralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions."). Allowing this case to proceed on a separate track would frustrate this goal. *See Volkswagen*, 2016 WL 3040492, at *7 ("As for Defendants, if a stay is not issued and they have to litigate this case separately from the hundreds of other cases pending in the MDL, they would suffer some extra burden."); *see also Hertz Corp. v. The Gator Corp.*, 250 F. Supp. 2d 421, 427 (D.N.J. 2003) ("[T]he heavy financial burden on [defendants] borne by having to defend [themselves] in multiple fora . . . is a clear hardship weighing in favor of staying [an] action until the MDL Panel renders its decision."). Furthermore, proceeding in multiple forums would expose McKesson to the risk of inconsistent rulings. *See* Ex. 1, Transfer Order at 3 ("[A]llowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings.").

Finally, a temporary stay would not prejudice the Commonwealth. If the JPML transfers the case, the Northern District of Ohio can and will resolve pretrial matters in this and every other opioid-related case in the MDL, guaranteeing consistent results. If the JPML does not transfer the

case, the Commonwealth's action can proceed in this Court. The JPML will make a final transfer decision in a reasonable amount of time, causing minimal delay at worst.

Simply put, this Court need not take any action in this case until the JPML makes a final transfer decision.

### B. A Preliminary Assessment of the Commonwealth's Remand Motion Does Not Show that Federal Jurisdiction Is "Clearly Improper."

As this Court has recognized, when considering whether to rule on remand or instead stay that decision pending a transfer decision, the court should make a "preliminary assessment of jurisdiction" and remand only if "jurisdiction is clearly improper." *Beshear*, 2016 WL 3040492, at \*7. "[T]he appropriate inquiry here is not necessarily the eventual possibility that this case *could* be remanded to state court, but rather whether there is any reasonable possibility that federal jurisdiction exists—or . . . whether federal jurisdiction is *clearly* absent." *Id.* at \*8 (emphasis in original; citations omitted). Here, not only is federal jurisdiction *not* "*clearly* absent," it is clearly present. None of Plaintiff's remand arguments actually refutes federal question jurisdiction.

As an initial matter, Plaintiff cannot rely exclusively on state law when no state law exists regarding suspicious order identification, reporting, or shipping. Apparently recognizing that McKesson lawfully distributes prescription pharmaceuticals, including prescription opioids, to DEA-registered pharmacies, Plaintiff asserts, the "[t]he allegations in the Complaint are limited to the *illegal* distribution – or over-distribution – of opioids in the Commonwealth of Kentucky by McKesson . . . ." EDKY Dkt. No. 4-1 at 2 (emphasis added). To support such a claim, Plaintiff must allege that McKesson violated duties that constrain its lawful distribution, but the duties alleged in the Complaint are found only in federal law. *See, e.g.*, EDKY Dkt. No. 1-1 ¶ 42 (alleging that the "type of diversion and abuse that is complained of herein" is in violation of a closed distribution system "specifically designed by Congress"); *id.* ¶ 44 (citing only federal law, "21

C.F.R. § 1301.74; *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017)," for the "specific duties upon wholesale distributors to monitor, identify, halt and, perhaps most importantly, report suspicious orders of controlled substances"); *id.* ¶ 126 (alleging that McKesson created public nuisance by allegedly "intentionally and/or unlawfully fail[ing] to maintain effective controls against diversion through proper monitoring, distributing opioids without reporting, and refusing to fail to fill suspicious orders").

McKesson's Notice of Removal lists and quotes Plaintiff's facial reliance on duties arising only under the federal CSA. EDKY Dkt. No. 1 ¶¶ 14, 16. Nowhere in Plaintiff's Complaint or Motion to Remand does Plaintiff identify a state law source for a requirement that wholesale pharmaceutical distributors identify and report suspicious orders of controlled substances to a Kentucky government official or entity or a state law source for a requirement that wholesale pharmaceutical distributors refuse to ship suspicious orders of controlled substances to registered pharmacies.[5] "Although plaintiffs could lose their [over-distribution] claim[s] without the court reaching the federal question, it seems that they cannot win unless the court answers that question." *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012).

Moreover, Plaintiff's arguments concerning the importance of the federal question at issue are off-base. Plaintiff incorrectly asserts that "McKesson's obligations under federal law [are] well-settled" but not actually disputed because McKesson has "conceded [them] in other contexts." EDKY Dkt. No. 4-1 at 7. To the contrary, to succeed on its claims in this lawsuit, Plaintiff must prove the alleged violations of federal law. Thus, those alleged violations are actually disputed in

---

[5] Although Plaintiff asserts as an example of its claims "aris[ing] under Kentucky law" that "Kentucky law requires that distributors of opioids maintain state licensure separate from that required by federal regulation," EDKY Dkt. No. 4-1 at 6, Plaintiff does not allege that McKesson was not duly licensed in Kentucky (it was and is), and none of Plaintiff's claims is based on an allegation that McKesson did not maintain its "separate" state licensure. Plaintiff's example, then, is not one in which its claims arise under state law.

this action.  Moreover, even if prior settlements with other government entities related to other jurisdictions were relevant to this matter (they are not), those settlements would not establish that Distributors have conceded liability to the Commonwealth.  Furthermore, Plaintiff's discussion of federal question jurisdiction in Medicaid suits against pharmaceutical manufacturers, *id.* at 9-10, is inapposite.  Plaintiff's allegations against McKesson are allegations of over-distribution in violation of federal law, not allegations of misrepresentation, such as those in the referenced Medicaid cases against manufacturers that promote the pharmaceuticals they manufacture.  Finally, the federal-state court balance would not be upset, particularly when more than 450 similar cases already are in federal court and consolidated in the MDL.[6]

Although McKesson will be prepared to respond in full to Plaintiff's Motion to Remand at the appropriate time, for now a preliminary assessment of the jurisdictional questions establishes a reasonable possibility that federal jurisdiction exists and the propriety of a stay.

### C. Because Plaintiff's Motion to Remand Is Premature, Plaintiff's Motion for Expedited Briefing Schedule Should Be Denied.

Although Plaintiff recognizes that "[t]his case is one of hundreds filed against [McKesson] to address McKesson's role in creating the opioid crisis," EDKY Dkt. No. 5-1, at ¶ 1, Plaintiff nonetheless seeks expedited briefing of its remand motion in an effort to avoid transfer to the MDL and purported "delay."  *Id.* at ¶ 2.

Plaintiff's concern about delay is misplaced.  Judge Polster has stated that the MDL court "is currently dedicating its efforts toward achieving a global settlement of all opioid litigation."

---

[6] Judge Polster's Order Regarding State Court Coordination does not disclaim, or even specifically address, his jurisdiction over cases by state Attorneys General that base claims on federal law.  *See* Case No. 17-MD-2804, Dkt. No. 146 (N.D. Ohio Feb. 27, 2018).  Judge Polster simply encouraged participation in his global settlement efforts by stating that Attorneys General could participate without limiting their existing rights.  And while states are, of course, sovereign—and Attorneys General may enforce state law in state courts—federal jurisdiction is proper when an Attorney General seeks to enforce federal law, as does the Commonwealth's Attorney General in this case.

Order Regarding State Court Coordination, Case No. 17-MD-2804, Dkt. No. 146, at 1 (N.D. Ohio Feb. 27, 2018). And this Court recognizes that "[t]he alternative of allowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings." Ex. 2, *Floyd Cnty.*, slip op. at *3 (quoting MDL Transfer Order).

As established above, a stay is warranted here pending a decision by the JPML on whether to transfer this related case to the MDL. Until such a decision is issued, there should be no briefing on Plaintiff's Motion for Remand, expedited or otherwise.

## CONCLUSION

For these reasons, McKesson respectfully requests that the Court enter an order (1) denying Plaintiff's Motion for Expedited Briefing Schedule; (2) vacating all deadlines, including any deadlines to respond to the Complaint or Plaintiff's Motion to Remand; and (3) staying all proceedings in this case until further order of (a) the Northern District of Ohio if this matter is transferred to the MDL or (b) this Court if the matter is not transferred.

Respectfully submitted,

*/s/ Carol Dan Browning*
Carol Dan Browning
Jennifer A. Pekman
**STITES & HARBISON PLLC**
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone:   (502) 587-3400
E-mail:        cbrowning@stites.com
                    jpekman@stites.com

*Counsel for Defendant, McKesson Corporation*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was served on all counsel of record through CM/ECF on March 2, 2018.

                                          */s/ Carol Dan Browning*
                                          *Counsel for Defendant, McKesson Corporation*