UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, *ex rel.* ANDY BESHEAR, ATTORNEY GENERAL,<br><br>    PLAINTIFF,<br><br>v.<br><br>MCKESSON CORPORATION,<br><br>    DEFENDANT. | CIVIL ACTION NO. 3:18-CV-10<br><br>*ELECTRONICALLY FILED* |

## REPLY IN SUPPORT OF MOTION TO STAY PENDING RULING BY JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

This case belongs in federal court and in the multidistrict litigation with hundreds of other opioid-related cases involving common factual allegations, common legal questions, and common defendants.

As the Judicial Panel on Multidistrict Litigation (JPML) stated in a transfer order just yesterday:

> [T]ransfer is warranted for the reasons set out in our [initial] order directing centralization. In that order we held that the Northern District of Ohio was an appropriate Section 1407 forum for actions **sharing factual questions regarding the alleged** improper marketing of an/or **inappropriate distribution of various prescription opiate medications into** cities, **states**, and towns across the country. Plaintiffs in the initial motion for centralization were cities, counties and **a state that alleged: . . . distributors failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates**.

Transfer Order, *In re National Prescription Opiate Litig.*, MDL No. 2804, Doc. 1134, at 2 (J.P.M.L. Apr. 5, 2018) (emphasis added; citations omitted) (transferring to MDL, *inter alia*, case brought by Paterson, New Jersey removed to federal court on basis of federal question

jurisdiction identical to basis for removal of this case) [attached as **Exhibit A**].  The JPML's April 5, 2018 Transfer Order exactly describes this case as well.

The Commonwealth's unsupported assertions aside, federal jurisdiction is not "clearly absent" here, but *proper* because the Commonwealth's claims facially depend on the federal Controlled Substances Act (CSA) and raise substantial and disputed federal issues relating to the CSA.  *See* McKesson's Opp'n to Mot. for Remand, Dkt. No. 10.  The Commonwealth chose to plead that federal law is the source of the suspicious order reporting and shipping duties that the Commonwealth alleges McKesson violated.  It necessarily had to plead federal law because Kentucky controlled substances law does not impose any parallel suspicious order reporting or shipping duties on wholesale distributors.

The Commonwealth's opposition to the motion for stay merely recites its failed arguments for remand.  The Commonwealth does not address the factors that weigh in favor of a stay here:  A stay would promote judicial efficiency, prevent inconsistent rulings, and conserve resources of the parties and the Court—all with only a temporary delay until the MDL Panel makes a final transfer decision.  As this Court already has done with other removed opioid cases, the Court should stay all proceedings in this matter—including a decision on the Commonwealth's motion for remand—pending the JPML's ruling on transfer.

## ARGUMENT

### I.     Federal Jurisdiction Is Not "Clearly Absent."

The Commonwealth's response to McKesson's motion to stay hinges almost entirely on its incorrect claim that a preliminary review suggests that federal jurisdiction is "clearly absent." *See Beshear ex rel. Ky. v. Volkswagen Grp. of Am., Inc.*, No. 16-cv-27-GFVT, 2016 U.S. Dist. LEXIS 68543 (E.D. Ky. May 25, 2016).  But as set forth in McKesson's opposition to the Commonwealth's motion to remand, this case belongs in federal court because the complaint

facially relies on the federal CSA to obtain relief and necessarily raises substantial and disputed federal questions related to the CSA. *See* Opp'n Mot. Remand, Dkt. No. 10; *see also, e.g.*, Compl. ¶¶ 42, 44, 69, 70, 73, 114–17, 126, 167–170, & 179–180.

With respect to reliance on federal law, the Commonwealth's central theory of liability in this case—that McKesson, a distributor of FDA-approved prescription opioid medications, did not report or stop delivery of suspicious orders into Kentucky from an Ohio distribution hub—is necessarily based on purported violations of the federal CSA because Kentucky law *does not impose these duties* on McKesson. *See* 21 C.F.R. § 1301.71(a) (alleged duty to implement effective controls to detect and report suspicious orders); *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 212–13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc. Revocation of Registration*, 72 Fed. Reg. 36,487, 36,501 (DEA July 3, 2007)) (discussing DEA interpretation of CSA requiring distributors to "decline to ship" suspicious controlled substances orders).

The federal issues also are "actually disputed," "substantial," and may be resolved in federal court "without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258–59 (2013). The "central point of dispute" is whether McKesson violated duties that arise only under the federal CSA; the claims involve a federal agency; the case raises the same critical legal questions as hundreds of others in a complex federal regulatory regime; and the federal issues may be resolved in federal court without disrupting the federal-state balance because the MDL court already is confronting the same issues raised by the Commonwealth here. *See* Opp. Mot. Remand, Dkt. No. 10 at 9–12.

That the Commonwealth purports to also bring claims under state law is irrelevant: "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005); *see Exxon Mobil Corp. v.*

*Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005).  Even "[w]here a well-pleaded complaint does not seek relief under federal law, a court may find removal proper if the plaintiff's complaint raises a 'substantial' federal question."  *Landers v. Morgan Asset Mgmt.*, 2009 U.S. Dist. LEXIS 30891, at \*17 (W.D. Tenn. Mar. 31, 2009); *see also Gunn*, 568 U.S. at 258; *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007).

The Commonwealth's repeated mischaracterization of Judge Polster's order, in which the court "recognize[d] it has no jurisdiction over (1) the AGs or their representatives, [or] (2) the State cases they have filed," cannot support a remand.  Resp. at 2–3 (citing *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, Dkt. No. 146, Order Regarding State Court Coordination (N.D. Ohio Feb. 27, 2018)).  That order—removed from context in the Commonwealth's response—never disclaims, or even addresses, federal jurisdiction over cases by state attorneys general that assert substantial federal questions.  Judge Polster simply encouraged voluntary participation in his global settlement efforts by stating that attorneys general could participate without limiting their existing rights.  In fact, Kentucky's Attorney General has participated in some of these discussions.  Although attorneys general may enforce state law in state courts, federal jurisdiction is proper where—as here—the claims necessarily raise substantial and disputed federal issues.

## II.     This Case Presents Substantial Common Issues with the Cases in the MDL.

Because jurisdiction is not "clearly absent," the Court must examine the commonality between this case and the others that have been or may be transferred to the MDL.  *Volkswagen*, 2016 U.S. Dist. LEXIS 68543, at \*20–21.  As in *Volkswagen*, this case has significant common questions of law and fact with hundreds of others in which government entities assert claims against pharmaceutical manufacturers, distributors, and physicians relating to the sale,

- 4 -

marketing, and distribution of FDA-approved prescription opioid medications. *See* Mot. Ex. 1, Transfer Order. The Court therefore should stay the litigation pending a decision on transfer.

The Commonwealth's reliance on *West Virginia v. McKesson Corporation* to distinguish the jurisdictional issue here from the cases in the MDL is misplaced. Resp. at 8–10. Unlike here, in West Virginia the state identified state controlled substances regulations that created specific suspicious order reporting and anti-diversion duties that McKesson was alleged to have breached. *W. Va. ex rel. Morrisey v. McKesson Corp.*, No. 16-1772, 2017 U.S. Dist. LEXIS 9352, at *20–21 (S.D. W. Va. Jan. 24, 2017).

But in *Kentucky*, to prove claims based on an alleged duty to identify, report, and stop suspicious orders of opioids, the Commonwealth *must* prove a violation of the federal CSA. Kentucky law does not impose those duties on wholesale distributors; so here, the duties alleged in the complaint are found *only in federal law* in the CSA and in the implementing regulations. *See* 21 C.F.R. § 1301.71(a) (alleged duty to implement effective controls to detect and report suspicious orders); *Masters*, 861 F.3d at 212–13 (citing *In re Southwood Pharm., Inc. Revocation of Registration*, 72 Fed. Reg. 36,487, 36,501 (DEA July 3, 2007)) (discussing DEA interpretation of CSA requiring distributors to "decline to ship" suspicious controlled substances orders).

Unlike in West Virginia, the Commonwealth cannot identify a state-law corollary to the federal requirements that wholesale pharmaceutical distributors like McKesson (*i*) identify and report suspicious orders of controlled substances to a Kentucky government official or entity or (*ii*) refuse to ship suspicious orders of controlled substances to registered pharmacies.[1] Although the Commonwealth has asserted as an example of its claims "aris[ing] under Kentucky law" that

---

[1] West Virginia law does not explicitly impose a requirement that a distributor refuse to ship suspicious orders that is similar to the DEA-created shipping requirement. *Masters*, 861 F.3d at 212–13. The West Virginia Attorney General nonetheless argued in support of remand that a requirement not to ship could be implied from West Virginia's anti-diversion regulation. Kentucky law lacks a similar regulation.

"Kentucky law requires that distributors of opioids maintain state licensure separate from that required by federal regulation," Dkt. No. 4-1 at 6, the Commonwealth does not and cannot allege that McKesson lacked a Kentucky license, and none of the Commonwealth's claims are based on an allegation that McKesson did not maintain its "separate" state licensure.

Moreover, commonality of jurisdictional issues is only part of the analysis. As the JPML confirmed yesterday in transferring eight cases making identical objections about lack of jurisdiction: "[A]rguments concerning the propriety of federal jurisdiction are insufficient to warrant vacating conditional transfer orders covering otherwise factually-related cases." Ex. A, Apr. 5, 2018 JPML Transfer Order, at 2. In *Volkswagen*, this Court determined that although the plaintiff's status as a government entity made the case "somewhat more unique," the factual similarities between that case and the MDL cases created the "possibility of imposing different state law remedies for the same behavior." 2016 U.S. Dist. LEXIS 68543, at *20–21. As in *Volkswagen*, and as confirmed in the JPML's recent Transfer Order, this Court should find that the factual similarities necessitate consistency in the case and determine that the MDL court holds a better position to decide the issues. *Id.* at *21.

## III.    A Stay Would Promote Judicial Economy Without Prejudicing the Commonwealth.

Because federal jurisdiction is not "clearly absent" and this case shares common issues with MDL cases, the Court considers "(1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Volkswagen*, 2016 U.S. Dist. LEXIS 68543, at *21. The "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case." *Id.* at *27. The Commonwealth's passing mention of the relevant factors, devoid of analysis, *see* Resp. at 11–12, cannot support its opposition to a temporary stay for at least three reasons.

First, a stay would promote judicial economy. Judge Polster has stated that he intends to rule on motions to remand. Mot. Ex. 2, *Floyd Cty. v. Purdue Pharma L.P.*, No. 7:17-cv-00186, slip op. at *4 (E.D. Ky. Jan. 22, 2018) ("Judge Polster has indicated his desire to address motions to remand collectively."). On the merits, the MDL court necessarily will be required to decide the critical issues raised by the Commonwealth's claims—namely, wholesale distributors' compliance with the federal CSA. *See Volkswagen*, 2016 U.S. Dist. LEXIS 68543, at *26–27 ("[T]he court system's interest in judicial economy, fairness, and consistency is the factor that weighs most heavily in favor of granting a stay in this case."). Every claim in the opioid cases against distributors is that they over-distributed opioids in violation of a purported duty to limit shipments of "suspicious orders." Although the specific legal claims that the plaintiffs assert are varied, they all arise from this same basic allegation. Only the federal CSA provides a basis for Kentucky plaintiffs to make this common claim of wrongful over-distribution. Indeed, the Commonwealth pleads as much when it alleges that the "'closed' chain of distribution" under which McKesson operates "was specifically designed by Congress to prevent the type of diversion and abuse that is complained of herein." Compl. ¶ 42. And again, the JPML just yesterday confirmed the propriety of transferring all "otherwise factually-related cases" to the MDL despite plaintiffs' "arguments concerning the propriety of federal jurisdiction." Ex. A, Apr. 5, 2018 JPML Transfer Order, at 2.

Second, McKesson would be unduly and unnecessarily harmed in the absence of a stay. The Commonwealth's argument that McKesson would not be subject to inconsistent rulings on the jurisdictional issues in this case, *see* Resp. at 11–12, misses the mark. As described above, Judge Polster will decide the motions for remand, which undoubtedly will include cases that present identical jurisdictional arguments. And, on the merits, this case presents precisely the

same questions that will be raised by hundreds of others in the MDL. *See* Mot. Ex. 1, Transfer Order at 3 ("[A]llowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings."). Absent a stay, McKesson will be improperly required to litigate the same issues separately from hundreds of other cases. *See Volkswagen*, 2016 U.S. Dist. LEXIS 68543, at *26 ("As for Defendants, if a stay is not issued and they have to litigate this case separately from the hundreds of other cases pending in the MDL, they would suffer some extra burden.").

Third, and finally, the Commonwealth cannot identify any prejudice that it would suffer as a result of a stay. If the case is transferred, the MDL Court will decide the remand motion. If the case stays here, this Court can decide the remand motion at that time. The JPML will make a final transfer decision in due course; the brief delay in waiting on this ruling cannot justify moving this case forward on a separate track in this Court.

## CONCLUSION

The Court should stay all proceedings and deadlines in this matter until the JPML decides whether to transfer this case to the MDL.

*/s/ Carol Dan Browning*
Carol Dan Browning
Jeffrey S. Moad
Carolyn Purcell
**STITES & HARBISON PLLC**
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
E-mail:     cbrowning@stites.com
            jmoad@stites.com
            cpurcell@stites.com

Counsel for *McKesson Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2018, I served the foregoing document on all counsel of record through CM/ECF.


*/s/ Carol Dan Browning*
Counsel for McKesson Corporation